TRACY L. WILKISON
Acting United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
SCOTT PAETTY (Cal. Bar No. 274719)
BRIAN FAERSTEIN (Cal. Bar No. 274850)
Assistant United States Attorneys
Major Frauds/Environmental and Community Safety Crimes Sections
    1100/1300 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-6527/3819
    Facsimile: (213) 894-6269/0141
    E-mail:    Scott.Paetty@usdoj.gov/Brian.Faerstein@usdoj.gov

DANIEL S. KAHN
Acting Chief, Fraud Section
Criminal Division, U.S. Department of Justice
CHRISTOPHER FENTON
Trial Attorney, Fraud Section
Criminal Division, U.S. Department of Justice
    1400 New York Avenue NW, 3rd Floor
    Washington, DC 20530
    Telephone: (202) 320-0539
    Facsimile: (202) 514-0152
    E-mail:    Christopher.Fenton@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 20-579(A)-SVW |
|---|---|
| Plaintiff, | PLEA AGREEMENT FOR DEFENDANT EDVARD PARONYAN |
| v. | |
| RICHARD AYVAZYAN,<br>  aka "Richard Avazian" and<br>    "Iuliia Zhadko,"<br>MARIETTA TERABELIAN,<br>  aka "Marietta Abelian" and<br>    "Viktoria Kauichko,"<br>ARTUR AYVAZYAN,<br>  aka "Arthur Ayvazyan," and<br>TAMARA DADYAN,<br>MANUK GRIGORYAN,<br>  aka "Mike Grigoryan," and<br>    "Anton Kudiumov,"<br>ARMAN HAYRAPETYAN,<br>EDVARD PARONYAN, | |

1 |   aka "Edvard Paronian" and
          "Edward Paronyan," and
2 | VAHE DADYAN,

3 | Defendants,

4 |             Defendant.

5

6     1.    This constitutes the plea agreement between EDVARD PARONYAN

7 | ("defendant") and the United States Attorney's Office for the Central

8 | District of California and the United States Department of Justice,

9 | Criminal Division, Fraud Section (collectively referred to herein as

10 | the "United States"), in the above-captioned case.  This agreement is

11 | limited to the United States and cannot bind any other federal,

12 | state, local, or foreign prosecuting, enforcement, administrative, or

13 | regulatory authorities.

14                      DEFENDANT'S OBLIGATIONS

15     2.    Defendant agrees to:

16         a.    At the earliest opportunity requested by the United

17 | States and provided by the Court, appear and plead guilty to counts

18 | one and twenty-six of the first superseding indictment in United

19 | States v. Richard Ayvazyan et al., CR No. 20-579(A), which charge

20 | defendant with conspiracy to commit bank and wire fraud, in violation

21 | of 18 U.S.C. § 1349, and conspiracy to commit money laundering, in

22 | violation of 18 U.S.C. § 1956(h).

23         b.    Agree that all court appearances, except his

24 | sentencing hearing, may proceed by video-teleconference ("VTC") or

25 | telephone, if VTC is not reasonably available, so long as such

26 | appearances are authorized by Order of the Chief Judge 20-097 or

27 | another order, rule, or statute.  Defendant understands that, under

28 | the United States Constitution, the United States Code, and the

2

Federal Rules of Criminal Procedure (including Rules 11 and 43), he may have the right to be physically present at these hearings. Defendant understands that right and, after consulting with counsel, voluntarily agrees to waive it and to proceed remotely. Defense counsel also joins in this consent, agreement, and waiver. Specifically, this agreement includes, but is not limited to, the following:

i.   Defendant consents under Federal Rules of Criminal Procedure 5(f) and 10(c) and Section 15002(b) of the CARES Act to proceed with his initial appearance and arraignment by VTC or telephone, if VTC is not reasonably available.

ii.   Defendant consents under Section 15002(b) of the CARES Act to proceed with his waiver of indictment, under Federal Rule of Criminal Procedure 7(b), by VTC or telephone, if VTC is not reasonably available.

iii. Defendant consents under Section 15002(b) of the CARES Act to proceed with his change of plea hearing by VTC or telephone, if VTC is not reasonably available.

iv.   Defendant consents under 18 U.S.C. § 3148 and Section 15002(b) of the CARES Act to proceed with any hearing regarding alleged violations of the conditions of pretrial release by VTC or telephone, if VTC is not reasonably available.

c.   Not contest facts agreed to in this agreement.

d.   Abide by all agreements regarding sentencing contained in this agreement.

e.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

3

1         f.   Not commit any crime; however, offenses that would be

2  excluded for sentencing purposes under United States Sentencing

3  Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not

4  within the scope of this agreement.

5         g.   Be truthful at all times with the United States

6  Probation and Pretrial Services Office and the Court.

7         h.   Pay the applicable special assessments at or before

8  the time of sentencing unless defendant has demonstrated a lack of

9  ability to pay such assessments.

10        i.   At or before the time of sentencing, satisfy any and

11  all restitution/fine obligations based on ability to pay by

12  delivering a certified check or money order to the Fiscal Clerk of

13  the Court in the amount of $430,187, to be held until the date of

14  sentencing and, thereafter, applied to satisfy defendant's

15  restitution/fine balance.  Payments may be made to the Clerk, United

16  States District Court, Fiscal Department, 255 East Temple Street,

17  11th Floor, Los Angeles, California 90012.

18        j.   Ability to pay shall be assessed based on the

19  Financial Disclosure Statement, referenced below, and all other

20  relevant information relating to ability to pay.

21        k.   Defendant agrees that any and all restitution/fine

22  obligations ordered by the Court will be due in full and immediately.

23  The government is not precluded from pursuing, in excess of any

24  payment schedule set by the Court, any and all available remedies by

25  which to satisfy defendant's payment of the full financial

26  obligation, including referral to the Treasury Offset Program.

27        l.   Complete the Financial Disclosure Statement on a form

28  provided by the United States and, within 30 days of defendant's

entry of a guilty plea, deliver the signed and dated statement, along with all of the documents requested therein, to the United States by either email at usacac.FinLit@usdoj.gov (preferred) or mail to the United States Financial Litigation Section at 300 N. Los Angeles St., Suite 7516, Los Angeles, CA 90012.

       m.   Authorize the United States to obtain a credit report upon returning a signed copy of this plea agreement.

       n.   Consent to the United States inspecting and copying all of defendant's financial documents and financial information held by the United States Probation and Pretrial Services Office.

    3.   Defendant further agrees:

       a.   To forfeit all right, title, and interest in and to any and all monies, properties, and/or assets of any kind, derived from or acquired as a result of the illegal activity to which defendant is pleading guilty (collectively, the "Forfeitable Assets").

       b.   To the Court's entry of an order of forfeiture at or before sentencing with respect to the Forfeitable Assets and to the forfeiture of the assets.

       c.   To take whatever steps are necessary to pass to the United States clear title to the Forfeitable Assets, including, without limitation, the execution of a consent decree of forfeiture and the completing of any other legal documents required for the transfer of title to the United States.

       d.   Not to contest any administrative forfeiture proceedings or civil judicial proceedings commenced against the Forfeitable Assets. If defendant submitted a claim and/or petition for remission for all or part of the Forfeitable Assets on behalf of

himself or any other individual or entity, defendant shall and hereby does withdraw any such claims or petitions, and further agrees to waive any right he may have to seek remission or mitigation of the forfeiture of the Forfeitable Assets.

  e. Not to assist any other individual in any effort falsely to contest the forfeiture of the Forfeitable Assets.

  f. Not to claim that reasonable cause to seize the Forfeitable Assets was lacking.

  g. To prevent the transfer, sale, destruction, or loss of any and all assets described above to the extent defendant has the ability to do so.

  h. To fill out and deliver to the United States a completed financial statement listing defendant's assets on a form provided by the United States.

  i. That forfeiture of Forfeitable Assets shall not be counted toward satisfaction of any special assessment, fine, restitution, costs, or other penalty the Court may impose.

<u>THE UNITED STATES' OBLIGATIONS</u>

4. The United States agrees to:

  a. Not contest facts agreed to in this agreement.

  b. Abide by all agreements regarding sentencing contained in this agreement.

  c. At the time of sentencing, move to dismiss the remaining counts of the superseding indictment and move to dismiss the underlying indictment as against defendant. Defendant agrees, however, that at the time of sentencing the Court may consider any dismissed charges in determining the applicable Sentencing Guidelines

1  range, the propriety and extent of any departure from that range, and

2  the sentence to be imposed.

3          d.    At the time of sentencing, provided that defendant

4  demonstrates an acceptance of responsibility for the offenses up to

5  and including the time of sentencing, recommend a two-level reduction

6  in the applicable Sentencing Guidelines offense level, pursuant to

7  U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an

8  additional one-level reduction if available under that section.

9          e.    Recommend that defendant be sentenced to a term of

10 imprisonment no higher than the low end of the applicable Sentencing

11 Guidelines range, provided that the offense level used by the Court

12 to determine that range is 20 or higher and provided that the Court

13 does not depart downward in offense level or criminal history

14 category.  For purposes of this agreement, the low end of the

15 Sentencing Guidelines range is that defined by the Sentencing Table

16 in U.S.S.G. Chapter 5, Part A.

17                        NATURE OF THE OFFENSES

18     5.    Defendant understands that for defendant to be guilty of

19 the crime charged in count one of the superseding indictment in

20 United States v. Richard Ayvazyan et al., CR No. 20-579(A), which

21 charges defendant with conspiracy to commit bank and wire fraud, in

22 violation of 18 U.S.C. § 1349, the following must be true: (1)

23 beginning in or around March 2020 and ending in or around August

24 2020, there was an agreement between two or more persons to commit at

25 least one of the following two crimes: (a) wire fraud, in violation

26 of 18 U.S.C. § 1343, and/or (b) bank fraud, in violation of 18 U.S.C.

27 § 1344(2); and (2) defendant became a member of the conspiracy

28

1  knowing of at least one of its objects and intending to help

2  accomplish it.

3      In order for defendant to be guilty of the crime of wire fraud,

4  in violation of 18 U.S.C. § 1343, the following must be true: (1)

5  defendant knowingly participated in a scheme or plan to defraud, or a

6  scheme or plan for obtaining money or property by means of false or

7  fraudulent pretenses, representations, promises, or omitted facts.

8  Deceitful statements or half-truths may constitute false or

9  fraudulent representations; (2) the statements made or facts omitted

10  as part of the scheme were material, that is, they had a natural

11  tendency to influence, or were capable of influencing, a person to

12  part with money or property; (3) defendant acted with the intent to

13  defraud, that is, the intent to deceive and cheat; and (4) defendant

14  used, or caused to be used, an interstate wire communication to carry

15  out or attempt to carry out an essential part of the scheme.

16      In order for defendant to be guilty of the crime of bank fraud,

17  in violation of 18 U.S.C. § 1344(2), the following must be true: (1)

18  defendant knowingly carried out a scheme or plan to obtain money or

19  property from a financial institution by making false statements or

20  promises; (2) defendant knew that the statements or promises were

21  false; (3) the statements or promises were material, that is, they

22  had a natural tendency to influence, or were capable of influencing,

23  a financial institution to part with money or property; (4) defendant

24  acted with the intent to defraud; and (5) the financial institution

25  was federally insured.

26      Defendant understands that for defendant to be guilty of the

27  crime charged in count twenty-six of the superseding indictment in

28  United States v. Richard Ayvazyan et al., CR No. 20-579(A), which

8

charges defendant with conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h), the following must be true:   (1) defendant agreed with one or more co-conspirators to knowingly conduct a financial transaction involving property that represented the proceeds of wire fraud and/or bank fraud; (2) defendant knew that the property represented the proceeds of some form of unlawful activity; and (3) defendant knew that the transaction was designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of such unlawful activity (i.e., § 1956(a)(1)(B)(i)).

PENALTIES AND RESTITUTION

6.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1349, is: 30 years' imprisonment; a five-year period of supervised release; a fine of $1,000,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1956(h), is: 20 years' imprisonment; a three-year period of supervised release; a fine of $500,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

7.   Defendant understands, therefore, that the total maximum sentence for all offenses to which defendant is pleading guilty is: 50 years' imprisonment; a five-year period of supervised release; a fine of $1,500,000 or twice the gross gain or gross loss resulting

1  from the offenses, whichever is greatest; and a mandatory special
2  assessment of $200.

3      8.   Defendant understands that defendant will be required to
4  pay full restitution to the victims of the offenses to which
5  defendant is pleading guilty.  Defendant agrees that, in return for
6  the United States' compliance with its obligations under this
7  agreement, the Court may order restitution to persons other than the
8  victims of the offenses to which defendant is pleading guilty and in
9  amounts greater than those alleged in the counts to which defendant
10 is pleading guilty.  In particular, defendant agrees that the Court
11 may order restitution to any victim of any of the following for any
12 losses suffered by that victim as a result: (a) any relevant conduct,
13 as defined in U.S.S.G. § 1B1.3, in connection with the offenses to
14 which defendant is pleading guilty; and (b) any counts dismissed and
15 charges not prosecuted pursuant to this agreement as well as all
16 relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with
17 those counts and charges.  The parties currently believe that the
18 applicable amount of restitution is approximately $430,187, but
19 recognize and agree that this amount could change based on facts that
20 come to the attention of the parties prior to sentencing.

21     9.   Defendant understands that supervised release is a period
22 of time following imprisonment during which defendant will be subject
23 to various restrictions and requirements.  Defendant understands that
24 if defendant violates one or more of the conditions of any supervised
25 release imposed, defendant may be returned to prison for all or part
26 of the term of supervised release authorized by statute for the
27 offense that resulted in the term of supervised release, which could
28

result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

10. Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition. Defendant understands that the convictions in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license. Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty pleas.

11. Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the convictions in this case make it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States. Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case. Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including his attorney or the Court, can predict to an absolute certainty the effect of his convictions on his immigration

11

1   status.   Defendant nevertheless affirms that he wants to plead guilty

2   regardless of any immigration consequences that his pleas may entail,

3   even if the consequence is automatic removal from the United States.

4                              FACTUAL BASIS

5        12.   Defendant admits that defendant is, in fact, guilty of the

6   offenses to which defendant is agreeing to plead guilty.   Defendant

7   and the United States agree to the statement of facts provided below

8   and agree that this statement of facts is sufficient to support pleas

9   of guilty to the charges described in this agreement and to establish

10   the Sentencing Guidelines factors set forth in paragraph 14 below but

11   is not meant to be a complete recitation of all facts relevant to the

12   underlying criminal conduct or all facts known to either party that

13   relate to that conduct.

14        Beginning in or about March 2020 and continuing through in or

15   about August 2020, defendant, together with co-conspirators known and

16   unknown, including codefendants Richard Ayvazyan ("R. Ayvazyan"),

17   Marietta Terabelian, Artur Ayvazyan, Tamara Dadyan ("T. Dadyan"),

18   Manuk Grigoryan, Arman Hayrapetyan, and Vahe Dadyan ("V. Dadyan")

19   (collectively, "co-conspirators"), engaged in a broad conspiracy to

20   fraudulently obtain disaster relief funds under the Paycheck

21   Protection Program ("PPP") and Economic Injury Disaster Loan Program

22   ("EIDL"), two federal relief programs that were created through The

23   Coronavirus Aid, Relief, and Economic Security ("CARES") Act, a

24   federal law that was enacted in or about March 2020 and that was

25   designed to provide emergency financial assistance to Americans

26   suffering economic harm as a result of the COVID-19 pandemic.

27        The PPP loan program authorized United States taxpayer funds in

28   forgivable loans to small businesses for job retention and certain

other qualifying expenses.  In order to obtain a PPP loan, a
qualifying business was required to submit a PPP loan application
signed by an authorized representative of the business.  The PPP loan
application required the small business (through its authorized
representative) to acknowledge the program rules and make certain
affirmative certifications in order to be eligible to obtain the PPP
loan.  One such certification required the applicant to affirm that
"[t]he [PPP loan] funds w[ould] be used to retain workers and
maintain payroll or make mortgage interest payments, lease payments,
and utility payments."  The applicant (through its authorized
representative) was also required to acknowledge that "I understand
that if the funds are used for unauthorized purposes, the federal
government may pursue criminal fraud charges."

In the PPP loan application, the applicant was required to
state, among other things, its: (a) average monthly payroll expenses;
and (b) number of employees.  These figures were used to calculate
the amount of money the small business was eligible to receive under
the PPP.  In addition, the applicant was required to provide
documentation showing its payroll expenses.  PPP loan proceeds were
required to be used by the business on certain permissible expenses,
namely, payroll costs, interest on mortgages, rent, and utilities.
The PPP allowed the interest and principal on the PPP loan to be
entirely forgiven if the business spent the loan proceeds on these
expenses within a designated period of time and used at least a
minimum amount of the PPP loan proceeds towards payroll expenses.

The EIDL program was a United States Small Business
Administration ("SBA") program that provided low-interest financing
to small businesses, renters, and homeowners in regions affected by

13

declared disasters.  The CARES Act authorized the SBA to provide EIDL loans of up to $2 million to eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic.  To obtain an EIDL loan, a qualifying business was required to submit an application to the SBA and provide information about the business's operations, such as the number of employees, gross revenues for the 12-month period preceding the disaster, and cost of goods sold in the 12-month period preceding the disaster.

The applicant was also required to certify that all of the information in the application was true and correct to the best of the applicant's knowledge.  EIDL loan applications were submitted directly to the SBA and processed by the agency with support from a government contractor.  The amount of the loan, if the application was approved, was determined based, in part, on the information provided by the applicant about employment, revenue, and cost of goods sold.  EIDL loan funds could be used for payroll expenses, sick leave, production costs, and business obligations, such as debts, rent, and mortgage payments.  If the applicant also obtained a loan under the PPP, the EIDL loan funds could not be used for the same purpose as the PPP loan funds.

To carry out the conspiracy, members of the conspiracy took the following actions, among other things:

- They knowingly and with the intent to defraud used and caused to be used, stolen, fictitious, and synthetic identities of individuals and used and caused to be used stolen, fictitious, synthetic, and sometimes real companies and business names to submit fraudulent applications for PPP and EIDL loans.

1       - They made and caused to be made, false statements and

2  submitted false documents to the SBA and federally-insured financial

3  institutions in connection with the fraudulent applications for PPP

4  and EIDL loans, including electronically submitting and causing to be

5  submitted false documents that included false representations

6  regarding the number of employees to whom the companies had paid

7  wages, false and fictitious tax documents, payroll records, bank

8  records, and identification documents, as well as false

9  certifications that the loans would be used for permissible business

10 purposes.

11      - They deposited and directed other co-conspirators to deposit

12 fraudulently obtained PPP and EIDL proceeds into bank accounts that

13 they controlled and then laundered and used the fraudulently obtained

14 PPP and EIDL loan proceeds for their own personal benefit and for the

15 personal benefit of their co-conspirators, including for the

16 purchases of luxury homes, gold coins, diamonds, jewelry, luxury

17 watches, fine furnishings, and designer consumer goods and clothing.

18      As part of the conspiracy and with the intent to fraudulently

19 exploit the PPP and EIDL programs, defendant took the following

20 actions with respect to the following loans.

21 The $130,187 PPP Loan for Redline Auto Collision

22      On or about May 7, 2020, defendant, together with other co-

23 conspirators, knowingly submitted to Lender B, a federally insured

24 financial institution, an application in the name of Redline Auto

25 Collision Inc. ("Redline Auto Collision"), seeking a PPP loan in the

26 amount of $130,187, which application: (a) falsely represented that

27 Redline Auto Collision had 12 employees, including employees for whom

28 it had paid wages and payroll taxes, and average monthly payroll

expenses of $52,075; and (b) falsely certified Redline Auto Collision would use the loan proceeds only for permissible business purposes. On or about May 11, 2020, in reliance on the false and fraudulent loan application submitted by defendant and his co-conspirators, Lender B wired approximately $130,187 in fraudulent PPP loan proceeds to a bank account controlled by defendant.  Defendant then used a portion of those proceeds not for legitimate business expenses, but rather to pay personal expenses, including large credit card charges to, among other vendors, Louis Vuitton, Neiman Marcus, and the Bellagio Las Vegas.

The $150,000 EIDL Loan for Redline Auto Collision

On or about April 2, 2020, defendant, together with other co-conspirators, submitted to the SBA an application in the name of Redline Auto Collision seeking an EIDL loan in the amount of approximately $150,000, which application falsely certified Redline Auto Collision would use the loan proceeds for permissible business purposes.  On or about June 8, 2020, in reliance on the loan application submitted by defendant and his co-conspirators, the SBA wired approximately $149,900 in proceeds from the Redline Auto Collision loan to a bank account controlled by defendant.  Then on or about June 17, 2020, defendant wired $150,000 of the fraudulently obtained EIDL loan proceeds to an account controlled by co-conspirator Terabelian for purposes of making a down payment on a luxury home in Tarzana held in the name of co-conspirators R. Ayvazyan and Terabelian.  In so doing, defendant knowingly engaged in a money laundering conspiracy, the object of which was to transfer illicit proceeds of the PPP and EIDL fraud scheme to conceal the nature, source, location, ownership and control of those proceeds and

16

contribute to the purchase of a luxury home held in the name of co-conspirators R. Ayvazyan and Terabelian.

The $150,000 EIDL Loan for RAC

On or about July 16, 2020, defendant submitted to the SBA an application seeking an EIDL loan for "RAC" in the amount of approximately $150,000 in the name of a close family relative, E.G. "RAC" was an acronym for "Redline Auto Collision," and did not represent a separate business. Defendant falsely certified that "RAC" had not received compensation from other sources as a result of the COVID-19 pandemic, including loans, when, in truth, "Redline Auto Collision" had already received a PPP loan and an EIDL loan. Defendant also falsely certified that RAC would use all of the loan proceeds for permissible business purposes. Defendant admits that his use of the fictitious entity RAC to apply for an EIDL for which he did not qualify constitutes the use of sophisticated means to commit fraud. On or about August 4, 2020, in reliance on the fraudulent application submitted by defendant, the SBA wired approximately $150,000 in proceeds from the RAC loan to a bank account controlled by defendant who then used at least some of the fraudulently obtained proceeds for his own personal benefit, not for permissible business purposes under the EIDL program.

Defendant agrees that the total loss caused by the above conduct is $430,187.

SENTENCING FACTORS

13.   Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set

forth in 18 U.S.C. § 3553(a).  Defendant understands that the

Sentencing Guidelines are advisory only, that defendant cannot have

any expectation of receiving a sentence within the calculated

Sentencing Guidelines range, and that after considering the

Sentencing Guidelines and the other § 3553(a) factors, the Court will

be free to exercise its discretion to impose any sentence it finds

appropriate up to the maximum set by statute for the crimes of

conviction.

     14.  Defendant and the United States agree to the following

applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 21 | U.S.S.G. § 2S1.1(a)(1),<br>U.S.S.G. §§ 2B1.1(a)(1),<br>(b)(1)(G), (b)(10) |
| Specific Offense<br>Characteristics | | |
| Conviction under § 1956 | +2 | U.S.S.G. § 2S1.1(b)(2)(B) |
| Acceptance of Responsibility: | -3 | U.S.S.G. § 3E1.1 |

The United States will agree to a two-level downward adjustment for

acceptance of responsibility (and, if applicable, move for an

additional one-level downward adjustment under U.S.S.G. § 3E1.1(b))

only if the conditions set forth in paragraph 4(d) are met and if

defendant has not committed, and refrains from committing, acts

constituting obstruction of justice within the meaning of U.S.S.G.

§ 3C1.1, as discussed below.  Subject to paragraph 28 below, and with

the exception that defendant reserves the right to argue for -- and

the United States reserves the right to contest -- that an adjustment

for mitigating role under U.S.S.G. § 3B1.2 applies, defendant and the

United States agree not to seek, argue, or suggest in any way, either

orally or in writing, that any other specific offense

characteristics, adjustments, or departures relating to the offense

level be imposed.  Defendant agrees, however, that if, after signing this agreement but prior to sentencing, defendant were to commit an act, or the United States were to discover a previously undiscovered act committed by defendant prior to signing this agreement, which act, in the judgment of the United States, constituted obstruction of justice within the meaning of U.S.S.G. § 3C1.1, the United States would be free to seek the enhancement set forth in that section and to argue that defendant is not entitled to a downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1.

15.  Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

16.  Defendant and the United States reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

17.  Defendant understands that by pleading guilty, defendant gives up the following rights:

       a.  The right to persist in a plea of not guilty.

       b.  The right to a speedy and public trial by jury.

       c.  The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

       d.  The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

1    e.    The right to confront and cross-examine witnesses
2    against defendant.
3    f.    The right to testify and to present evidence in
4    opposition to the charges, including the right to compel the
5    attendance of witnesses to testify.
6    g.    The right not to be compelled to testify, and, if
7    defendant chose not to testify or present evidence, to have that
8    choice not be used against defendant.
9    h.    Any and all rights to pursue any affirmative defenses,
10   Fourth Amendment or Fifth Amendment claims, and other pretrial
11   motions that have been filed or could be filed.
12                   WAIVER OF APPEAL OF CONVICTION
13   18.    Defendant understands that, with the exception of an appeal
14   based on a claim that defendant's guilty pleas were involuntary, by
15   pleading guilty defendant is waiving and giving up any right to
16   appeal defendant's convictions on the offenses to which defendant is
17   pleading guilty.  Defendant understands that this waiver includes,
18   but is not limited to, arguments that the statutes to which defendant
19   is pleading guilty are unconstitutional, and any and all claims that
20   the statement of facts provided herein is insufficient to support
21   defendant's pleas of guilty.
22              LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE
23   19.    Defendant agrees that, provided the Court imposes a total
24   term of imprisonment on all counts of conviction of no more than 51
25   months, defendant gives up the right to appeal all of the following:
26   (a) the procedures and calculations used to determine and impose any
27   portion of the sentence; (b) the term of imprisonment imposed by the
28   Court; (c) the fine imposed by the Court, provided it is within the

20

1  statutory maximum; (d) to the extent permitted by law, the

2  constitutionality or legality of defendant's sentence, provided it is

3  within the statutory maximum; (e) the amount and terms of any

4  restitution order, provided it requires payment of no more than

5  $430,187; (f) the term of probation or supervised release imposed by

6  the Court, provided it is within the statutory maximum; and (g) any

7  of the following conditions of probation or supervised release

8  imposed by the Court: the conditions set forth in Second Amended

9  General Order 20-04 of this Court; the drug testing conditions

10 mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and

11 drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

12      20.  The United States agrees that, provided (a) all portions of

13 the sentence are at or below the statutory maximum specified above

14 and (b) the Court imposes a term of imprisonment of no less than 41

15 months, the United States gives up its right to appeal any portion of

16 the sentence, with the exception that the United States reserves the

17 right to appeal the following: (a) the amount of restitution ordered

18 if that amount is less than $430,187.

19      21.  Defendant also gives up any right to bring a post-

20 conviction collateral attack on the convictions or sentence,

21 including any order of restitution, except a post-conviction

22 collateral attack based on a claim of ineffective assistance of

23 counsel, a claim of newly discovered evidence, or an explicitly

24 retroactive change in the applicable Sentencing Guidelines,

25 sentencing statutes, or statutes of conviction.  Defendant

26 understands that this waiver includes, but is not limited to,

27 arguments that the statutes to which defendant is pleading guilty are

28 unconstitutional, and any and all claims that the statement of facts

1  provided herein is insufficient to support defendant's pleas of
2  guilty.

3                RESULT OF WITHDRAWAL OF GUILTY PLEA
4       22.  Defendant agrees that if, after entering guilty pleas
5  pursuant to this agreement, defendant seeks to withdraw and succeeds
6  in withdrawing defendant's guilty pleas on any basis other than a
7  claim and finding that entry into this plea agreement was
8  involuntary, then (a) the United States will be relieved of all of
9  its obligations under this agreement; and (b) should the United
10  States choose to pursue any charge that was either dismissed or not
11  filed as a result of this agreement, then (i) any applicable statute
12  of limitations will be tolled between the date of defendant's signing
13  of this agreement and the filing commencing any such action; and
14  (ii) defendant waives and gives up all defenses based on the statute
15  of limitations, any claim of pre-indictment delay, or any speedy
16  trial claim with respect to any such action, except to the extent
17  that such defenses existed as of the date of defendant's signing this
18  agreement.

19              RESULT OF VACATUR, REVERSAL OR SET-ASIDE
20       23.  Defendant agrees that if any count of conviction is
21  vacated, reversed, or set aside, the United States may: (a) ask the
22  Court to resentence defendant on any remaining counts of conviction,
23  with both the United States and defendant being released from any
24  stipulations regarding sentencing contained in this agreement,
25  (b) ask the Court to void the entire plea agreement and vacate
26  defendant's guilty pleas on any remaining counts of conviction, with
27  both the United States and defendant being released from all their
28  obligations under this agreement, or (c) leave defendant's remaining

                                  22

1  convictions, sentence, and plea agreement intact.  Defendant agrees

2  that the choice among these three options rests in the exclusive

3  discretion of the United States.

EFFECTIVE DATE OF AGREEMENT

5  24.  This agreement is effective upon signature and execution of

6  all required certifications by defendant, defendant's counsel, and an

7  Assistant United States Attorney.

BREACH OF AGREEMENT

9  25.  Defendant agrees that if defendant, at any time after the

10  signature of this agreement and execution of all required

11  certifications by defendant, defendant's counsel, and an Assistant

12  United States Attorney, knowingly violates or fails to perform any of

13  defendant's obligations under this agreement ("a breach"), the United

14  States may declare this agreement breached.  All of defendant's

15  obligations are material, a single breach of this agreement is

16  sufficient for the United States to declare a breach, and defendant

17  shall not be deemed to have cured a breach without the express

18  agreement of the United States in writing.  If the United States

19  declares this agreement breached, and the Court finds such a breach

20  to have occurred, then: (a) if defendant has previously entered

21  guilty pleas pursuant to this agreement, defendant will not be able

22  to withdraw the guilty pleas, and (b) the United States will be

23  relieved of all its obligations under this agreement.

24  26.  Following the Court's finding of a knowing breach of this

25  agreement by defendant, should the United States choose to pursue any

26  charge that was either dismissed or not filed as a result of this

27  agreement, then:

28

1       a.    Defendant agrees that any applicable statute of
2 limitations is tolled between the date of defendant's signing of this
3 agreement and the filing commencing any such action.

4       b.    Defendant waives and gives up all defenses based on
5 the statute of limitations, any claim of pre-indictment delay, or any
6 speedy trial claim with respect to any such action, except to the
7 extent that such defenses existed as of the date of defendant's
8 signing this agreement.

9       c.    Defendant agrees that: (i) any statements made by
10 defendant, under oath, at the guilty plea hearing (if such a hearing
11 occurred prior to the breach); (ii) the agreed to factual basis
12 statement in this agreement; and (iii) any evidence derived from such
13 statements, shall be admissible against defendant in any such action
14 against defendant, and defendant waives and gives up any claim under
15 the United States Constitution, any statute, Rule 410 of the Federal
16 Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal
17 Procedure, or any other federal rule, that the statements or any
18 evidence derived from the statements should be suppressed or are
19 inadmissible.

20         COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES
21                          OFFICE NOT PARTIES

22   27.  Defendant understands that the Court and the United States
23 Probation and Pretrial Services Office are not parties to this
24 agreement and need not accept any of the United States' sentencing
25 recommendations or the parties' agreements to facts or sentencing
26 factors.

27   28.  Defendant understands that both defendant and the United
28 States are free to: (a) supplement the facts by supplying relevant

                                   24

information to the United States Probation and Pretrial Services
Office and the Court, (b) correct any and all factual misstatements
relating to the Court's Sentencing Guidelines calculations and
determination of sentence, and (c) argue on appeal and collateral
review that the Court's Sentencing Guidelines calculations and the
sentence it chooses to impose are not error, although each party
agrees to maintain its view that the calculations in paragraph 14 are
consistent with the facts of this case.  While this paragraph permits
both the United States and defendant to submit full and complete
factual information to the United States Probation and Pretrial
Services Office and the Court, even if that factual information may
be viewed as inconsistent with the facts agreed to in this agreement,
this paragraph does not affect defendant's and the United States'
obligations not to contest the facts agreed to in this agreement.

29.  Defendant understands that even if the Court ignores any
sentencing recommendation, finds facts or reaches conclusions
different from those agreed to, and/or imposes any sentence up to the
maximum established by statute, defendant cannot, for that reason,
withdraw defendant's guilty pleas, and defendant will remain bound to
fulfill all defendant's obligations under this agreement.  Defendant
understands that no one -- not the prosecutor, defendant's attorney,
or the Court -- can make a binding prediction or promise regarding
the sentence defendant will receive, except that it will be within
the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

30.  Defendant understands that, except as set forth herein,
there are no promises, understandings, or agreements between the
United States and defendant or defendant's attorney, and that no

25

1  additional promise, understanding, or agreement may be entered into
2  unless in a writing signed by all parties or on the record in court.
3              PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING
4       31.  The parties agree that this agreement will be considered
5  part of the record of defendant's guilty plea hearing as if the
6  entire agreement had been read into the record of the proceeding.
7  AGREED AND ACCEPTED
8  UNITED STATES ATTORNEY'S OFFICE
   FOR THE CENTRAL DISTRICT OF
9  CALIFORNIA
10 TRACY L. WILKISON
   Acting United States Attorney
11
12 _____ Catherine Ahn        May 26, 2021
   SCOTT PAETTY                                  _____
13 BRIAN FAERSTEIN                               Date
   Assistant United States Attorneys
14
15
16 CHRISTOPHER FENTON
   Trial Attorney, DOJ Fraud Section
17 _____                       5-26-21
18 EDVARD PARONYAN                               _____
   Defendant                                     Date
19
20
21 _____                       5/26/21
   MICHAEL G. FREEDMAN                            _____
22 Attorney for Defendant EDVARD                 Date
   PARONYAN
23
24
25
26              CERTIFICATION OF DEFENDANT
27      I have read this agreement in its entirety.  I have had enough
   time to review and consider this agreement, and I have carefully and
28

                                   26

thoroughly discussed every part of it with my attorney.  I understand
the terms of this agreement, and I voluntarily agree to those terms.
I have discussed the evidence with my attorney, and my attorney has
advised me of my rights, of possible pretrial motions that might be
filed, of possible defenses that might be asserted either prior to or
at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),
of relevant Sentencing Guidelines provisions, and of the consequences
of entering into this agreement.  No promises, inducements, or
representations of any kind have been made to me other than those
contained in this agreement.  No one has threatened or forced me in
any way to enter into this agreement.  I am satisfied with the
representation of my attorney in this matter, and I am pleading
guilty because I am guilty of the charges and wish to take advantage
of the promises set forth in this agreement, and not for any other
reason.

_____        5-26-21
EDVARD PARONYAN                         Date
Defendant


                CERTIFICATION OF DEFENDANT'S ATTORNEY

    I am EDVARD PARONYAN's attorney.  I have carefully and
thoroughly discussed every part of this agreement with my client.
Further, I have fully advised my client of his rights, of possible
pretrial motions that might be filed, of possible defenses that might
be asserted either prior to or at trial, of the sentencing factors
set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines
provisions, and of the consequences of entering into this agreement.
To my knowledge: no promises, inducements, or representations of any

1   kind have been made to my client other than those contained in this
2   agreement; no one has threatened or forced my client in any way to
3   enter into this agreement; my client's decision to enter into this
4   agreement is an informed and voluntary one; and the factual basis set
5   forth in this agreement is sufficient to support my client's entry of
6   guilty pleas pursuant to this agreement.
7
8   MICHAEL G. FREEDMAN                          Date  5/26/21
    Attorney for Defendant EDVARD
9   PARONYAN