TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
SCOTT PAETTY (Cal. Bar No. 274719)
BRIAN FAERSTEIN (Cal. Bar No. 274850)
CATHERINE S. AHN (Cal. Bar No. 248286)
Assistant United States Attorneys
Major Frauds/Environmental and Community Safety Crimes Sections
    1100/1300 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-6527/3819/2424
    Facsimile: (213) 894-6269/0141
    E-mail:    Scott.Paetty@usdoj.gov
            Brian.Faerstein@usdoj.gov
            Catherine.S.Ahn@usdoj.gov

DANIEL S. KAHN
Acting Chief, Fraud Section
Criminal Division, U.S. Department of Justice
CHRISTOPHER FENTON
Trial Attorney, Fraud Section
Criminal Division, U.S. Department of Justice
    1400 New York Avenue NW, 3rd Floor
    Washington, DC 20530
    Telephone: (202) 320-0539
    Facsimile: (202) 514-0152
    E-mail:    Christopher.Fenton@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 20-579(A)-SVW |
|        Plaintiff, | <u>PLEA AGREEMENT FOR DEFENDANT</u> <u>EDVARD PARONYAN</u> |
|           v. | |
| RICHARD AYVAZYAN,<br>  aka "Richard Avazian" and<br>    "Iuliia Zhadko,"<br>MARIETTA TERABELIAN,<br>  aka "Marietta Abelian" and<br>    "Viktoria Kauichko,"<br>ARTUR AYVAZYAN,<br>  aka "Arthur Ayvazyan," and<br>TAMARA DADYAN,<br>MANUK GRIGORYAN,<br>  aka "Mike Grigoryan," and | |

```
        "Anton Kudiumov,"
ARMAN HAYRAPETYAN,
EDVARD PARONYAN,
   aka "Edvard Paronian" and
        "Edward Paronyan," and
VAHE DADYAN,

Defendants,

               Defendant.
```

1. This constitutes the plea agreement between EDVARD PARONYAN, also known as "Edvard Paronian" and "Edward Paronyan" ("defendant") and the United States Attorney's Office for the Central District of California and the United States Department of Justice, Criminal Division, Fraud Section (collectively referred to herein as the "United States"), in the above-captioned case. This agreement is limited to the United States and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

<u>DEFENDANT'S OBLIGATIONS</u>

2. Defendant agrees to:

a. At the earliest opportunity requested by the United States and provided by the Court, appear and plead guilty to count six of the first superseding indictment in <u>United States v. Richard Ayvazyan et al.</u>, CR No. 20-579(A), which charges defendant with wire fraud, in violation of 18 U.S.C. § 1343.

b. Agree that all court appearances, except his sentencing hearing, may proceed by video-teleconference ("VTC") or telephone, if VTC is not reasonably available, so long as such appearances are authorized by Order of the Chief Judge 20-097 or another order, rule, or statute. Defendant understands that, under

1   the United States Constitution, the United States Code, and the

2   Federal Rules of Criminal Procedure (including Rules 11 and 43), he

3   may have the right to be physically present at these hearings.

4   Defendant understands that right and, after consulting with counsel,

5   voluntarily agrees to waive it and to proceed remotely.  Defense

6   counsel also joins in this consent, agreement, and waiver.

7   Specifically, this agreement includes, but is not limited to, the

8   following:

9            i.   Defendant consents under Section 15002(b) of the

10  CARES Act to proceed with his change of plea hearing by VTC or

11  telephone, if VTC is not reasonably available.

12           ii.  Defendant consents under 18 U.S.C. § 3148 and

13  Section 15002(b) of the CARES Act to proceed with any hearing

14  regarding alleged violations of the conditions of pretrial release by

15  VTC or telephone, if VTC is not reasonably available.

16           c.   Not contest facts agreed to in this agreement.

17           d.   Abide by all agreements regarding sentencing contained

18  in this agreement.

19           e.   Appear for all court appearances, surrender as ordered

20  for service of sentence, obey all conditions of any bond, and obey

21  any other ongoing court order in this matter.

22           f.   Not commit any crime; however, offenses that would be

23  excluded for sentencing purposes under United States Sentencing

24  Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not

25  within the scope of this agreement.

26           g.   Be truthful at all times with the United States

27  Probation and Pretrial Services Office and the Court.

28

h.    Pay the applicable special assessment at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessment.

i.    At or before the time of sentencing, satisfy any and all restitution/fine obligations based on ability to pay by delivering a certified check or money order to the Fiscal Clerk of the Court in the amount of $430,187, to be held until the date of sentencing and, thereafter, applied to satisfy defendant's restitution/fine balance.  Payments may be made to the Clerk, United States District Court, Fiscal Department, 255 East Temple Street, 11th Floor, Los Angeles, California 90012.

j.    Ability to pay shall be assessed based on the Financial Disclosure Statement, referenced below, and all other relevant information relating to ability to pay.

k.    Defendant agrees that any and all restitution/fine obligations ordered by the Court will be due in full and immediately. The government is not precluded from pursuing, in excess of any payment schedule set by the Court, any and all available remedies by which to satisfy defendant's payment of the full financial obligation, including referral to the Treasury Offset Program.

l.    Complete the Financial Disclosure Statement on a form provided by the United States and, within 30 days of defendant's entry of a guilty plea, deliver the signed and dated statement, along with all of the documents requested therein, to the United States by either email at usacac.FinLit@usdoj.gov (preferred) or mail to the United States Financial Litigation Section at 300 N. Los Angeles St., Suite 7516, Los Angeles, CA 90012.

4

1           m.    Authorize the United States to obtain a credit report

2    upon returning a signed copy of this plea agreement.

3           n.    Consent to the United States inspecting and copying

4    all of defendant's financial documents and financial information held

5    by the United States Probation and Pretrial Services Office.

6       3.    Defendant further agrees:

7           a.    To forfeit all right, title, and interest in and to

8    any and all monies, properties, and/or assets of any kind, derived

9    from or acquired as a result of the illegal activity to which

10   defendant is pleading guilty (collectively, the "Forfeitable

11   Assets").

12          b.    To the Court's entry of an order of forfeiture at or

13   before sentencing with respect to the Forfeitable Assets and to the

14   forfeiture of the assets.

15          c.    To take whatever steps are necessary to pass to the

16   United States clear title to the Forfeitable Assets, including,

17   without limitation, the execution of a consent decree of forfeiture

18   and the completing of any other legal documents required for the

19   transfer of title to the United States.

20          d.    Not to contest any administrative forfeiture

21   proceedings or civil judicial proceedings commenced against the

22   Forfeitable Assets.  If defendant submitted a claim and/or petition

23   for remission for all or part of the Forfeitable Assets on behalf of

24   himself or any other individual or entity, defendant shall and hereby

25   does withdraw any such claims or petitions, and further agrees to

26   waive any right he may have to seek remission or mitigation of the

27   forfeiture of the Forfeitable Assets.

28

e.    Not to assist any other individual in any effort
falsely to contest the forfeiture of the Forfeitable Assets.

f.    Not to claim that reasonable cause to seize the
Forfeitable Assets was lacking.

g.    To prevent the transfer, sale, destruction, or loss of
any and all assets described above to the extent defendant has the
ability to do so.

h.    That forfeiture of Forfeitable Assets shall not be
counted toward satisfaction of any special assessment, fine,
restitution, costs, or other penalty the Court may impose.

<u>THE UNITED STATES' OBLIGATIONS</u>

4.    The United States agrees to:

a.    Not contest facts agreed to in this agreement.

b.    Abide by all agreements regarding sentencing contained
in this agreement.

c.    At the time of sentencing, move to dismiss the
remaining counts of the first superseding indictment and move to
dismiss the underlying indictment as against defendant.  Defendant
agrees, however, that at the time of sentencing the Court may
consider any dismissed charges in determining the applicable
Sentencing Guidelines range, the propriety and extent of any
departure from that range, and the sentence to be imposed.

d.    At the time of sentencing, provided that defendant
demonstrates an acceptance of responsibility for the offense up to
and including the time of sentencing, recommend a two-level reduction
in the applicable Sentencing Guidelines offense level, pursuant to
U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an
additional one-level reduction if available under that section.

e.   Recommend that defendant be sentenced to a term of imprisonment no higher than the low end of the applicable Sentencing Guidelines range, provided that the offense level used by the Court to determine that range is 16 or higher and provided that the Court does not depart downward in offense level or criminal history category.  For purposes of this agreement, the low end of the Sentencing Guidelines range is that defined by the Sentencing Table in U.S.S.G. Chapter 5, Part A.

## NATURE OF THE OFFENSES

5.   Defendant understands that for defendant to be guilty of the crime charged in count six of the first superseding indictment in United States v. Richard Ayvazyan et al., CR No. 20-579(A), which charges defendant with committing wire fraud, in violation of 18 U.S.C. § 1343, the following must be true: (1) defendant knowingly participated in a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, promises, or omitted facts.  Deceitful statements or half-truths may constitute false or fraudulent representations; (2) the statements made or facts omitted as part of the scheme were material, that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property; (3) defendant acted with the intent to defraud, that is, the intent to deceive and cheat; and (4) defendant used, or caused to be used, an interstate wire communication to carry out or attempt to carry out an essential part of the scheme.

## PENALTIES AND RESTITUTION

6.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States

Code, Section 1343, is: 20 years' imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

7.   Defendant understands that defendant will be required to pay full restitution to the victims of the offense to which defendant is pleading guilty.  Defendant agrees that, in return for the United States' compliance with its obligations under this agreement, the Court may order restitution to persons other than the victims of the offense to which defendant is pleading guilty and in amounts greater than those alleged in the count to which defendant is pleading guilty.  In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offense to which defendant is pleading guilty; and (b) any counts dismissed and charges not prosecuted pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those counts and charges.  The parties currently believe that the applicable amount of restitution is approximately $430,187, but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

8.   Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the

offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

9. Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition. Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license. Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

10. Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the conviction in this case make it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States. Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case. Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including his attorney or the Court, can predict to an

absolute certainty the effect of his conviction on his immigration status.  Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is automatic removal from the United States.

<u>FACTUAL BASIS</u>

11.  Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty.  Defendant and the United States agree to the statement of facts provided below and agree that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 13 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

Defendant fraudulently obtained federal disaster relief funds distributed through the Paycheck Protection Program ("PPP"), and fraudulently used those funds and federal disaster relief funds obtained through the Economic Injury Disaster Loan Program ("EIDL").  Established by The Coronavirus Aid, Relief, and Economic Security ("CARES") Act, a federal law enacted in March 2020, the PPP and EIDL programs provided emergency financial assistance to Americans suffering economic harm as a result of the COVID-19 pandemic.  PPP loans were obtained by submitting applications to participating financial institutions, which administered the loans.  EIDL loans were obtained by submitting applications to the United States Small Business Administration ("SBA"), which disbursed the loans through financial institutions.  The PPP and EIDL programs were funded by U.S. taxpayers.  In order to obtain and retain funds distributed

through the PPP and EIDL programs, recipients were required to
certify that they would use the funds to pay for specified
permissible business expenses, for example, payroll and certain
operating expenses, and to use the funds for those purposes and no
others.

Defendant owned Redline Auto Collision, Inc. ("Redline Auto
Collision"), which at no time had more than five employees.
Defendant was acquainted with co-defendant Manuk Grigoriyan, who
visited defendant at Redline Auto Collision's business premises.  Co-
defendant Grigoryan was familiar with defendant and Redline Auto
Collision, including the number of defendant's employees, prior to
the submission of any PPP or EIDL loan applications on behalf of
defendant's business.

The $130,187 PPP Loan for Redline Auto Collision

In or about early May 2020, defendant asked co-defendant
Grigoryan to help defendant obtain a PPP loan.  Co-defendant
Grigoryan told defendant that he (co-defendant Grigoryan) knew
somebody who could get defendant a PPP loan.  Defendant understood
this to mean that co-defendant Grigoryan's acquaintance would obtain
a PPP loan for defendant regardless of whether defendant qualified
for such a loan.  With this understanding, defendant authorized
defendant Grigoryan to arrange for a PPP loan application to be
submitted in defendant's name and on behalf of defendant's business,
Redline Auto Collision.  Defendant knew at the time that a PPP loan
application required supporting payroll records.  Defendant knew that
he did not have, and would not be able to provide to co-defendant
Grigoryan any payroll records for Redline Auto Collison.  Defendant
therefore understood that the PPP loan application submitted for

11

Redline Auto Collision would contain a false and fraudulent representation that defendant, as the owner of Redline Auto Collision, had payroll records for Redline Auto Collision.

Co-defendant Grigoryan later told defendant that he would be receiving approximately $130,187 in PPP loan proceeds.  Although defendant did not then know whether the application had already been submitted, as he and co-defendant Grigoryan had agreed it would be, he knew the amount co-defendant Grigoryan reported defendant would receive was larger than what defendant believed his Redline Auto Collision qualified for based on the number of employees defendant actually had.  Defendant asked co-defendant Grigoryan how defendant was getting the larger amount.  Co-defendant Grigoryan stated that the PPP loan application represented or would represent that Redline Auto Collision had more employees than it actually had.  Defendant knew this representation was false and knew that any records that were submitted to support this representation would have to be fraudulent.  Defendant nonetheless told co-defendant Grigoryan that defendant agreed with submitting the PPP loan application with the false statements regarding the number of Redline Auto Collison's employees.

On or about May 11, 2020, in reliance on the false and fraudulent statements in the PPP loan application that defendant and co-defendant Grigoryan had agreed would be submitted on behalf of defendant's business Redline Auto Collision, Lender B, i.e., Celtic Bank, wired approximately $130,187 in fraudulent PPP loan proceeds to the Redline Auto Collision Bank 5 account, a J.P. Morgan Chase bank account controlled by defendant (the "RAC account").  The wire traveled interstate.  Defendant then used a portion of the PPP

proceeds to pay personal expenses, including large credit card charges to, among other vendors, Louis Vuitton, Neiman Marcus, and the Bellagio Las Vegas.  Defendant knew that his use of the funds for personal expenses violated the requirements of the PPP loan program because he was using the money to pay for expenses that were not legitimate business expenses.

Defendant also applied for two EIDL loans on behalf of Redline Auto Collision, as follows:

The $150,000 EIDL Loan for Redline Auto Collision

On or about April 2, 2020, defendant submitted an application for a $150,000 EIDL Loan on behalf of Redline Auto Collision. Defendant certified in that application that Redline Auto Collision would use the EIDL loan proceeds for permissible business purposes. On or about June 8, 2020, in reliance on the statements and certifications in the EIDL loan application that defendant had submitted, the SBA wired approximately $149,900 in EIDL loan proceeds to the RAC account. In or about June 2020, after defendant had received the PPP and EIDL loan proceeds described above, defendant went with co-defendant Grigoryan to a social gathering at which co-defendants Richard Ayvazyan and Marietta Terabelian were present.  Co-defendant Richard Ayvazyan told defendant that he (co-defendant Richard Ayvazyan) and co-defendant Terabelian needed money for a down payment on a new home they were purchasing, and asked defendant for a $150,000 loan. Defendant agreed and later transferred $150,000 from the RAC account to a Bank of America account held by Marietta Terabelian (the Terabelian Bank 2 account).  The $150,000 was substantially comprised of the EIDL and PPP proceeds defendant had received.  Defendant knew

1    and understood that he was obligated to use the EIDL and PPP proceeds
2    for business purposes and that funding a loan to co-defendants
3    Richard Ayvazyan and Terabelian via a transfer to co-defendant
4    Terabelian was not a permissible use of the funds.  Neither co-
5    defendant Richard Ayvazyan or co-defendant Terabelian ever repaid any
6    portion of the loan.

7            The $150,000 EIDL Loan for RAC

8            On or about July 16, 2020, defendant submitted to the SBA an
9    application for a $150,000 EIDL loan on behalf of "RAC."  By using
10   this acronym, defendant concealed that this EIDL application was in
11   fact for Redline Auto Collison.  Defendant also identified the owner
12   of the business as "E.G." instead of himself.  Defendant did so in
13   order to hide the fact that defendant had previously applied for, and
14   received, an EIDL loan for Redline Auto Collision.  Defendant falsely
15   certified that "RAC" had not received compensation from other sources
16   as a result of the COVID-19 pandemic, including loans, even though
17   defendant knew that Redline Auto Collision had already received a PPP
18   loan and an EIDL loan.  Defendant also falsely certified that RAC
19   would use all of the loan proceeds for permissible business purposes.
20   On or about August 4, 2020, in reliance on the fraudulent statements
21   in the application submitted by defendant, the SBA wired
22   approximately $150,000 in proceeds from the "RAC" loan to a bank
23   account controlled by defendant.  Defendant then used at least some
24   of the fraudulently obtained proceeds for his own personal benefit in
25   contravention of the EIDL program's requirements that the proceeds
26   only be used for permissible business purposes.

27           Defendant agrees that the total loss caused by the above-
28   described conduct is $430,187.

14

1

2                           SENTENCING FACTORS

3        12.   Defendant understands that in determining defendant's

4   sentence the Court is required to calculate the applicable Sentencing

5   Guidelines range and to consider that range, possible departures

6   under the Sentencing Guidelines, and the other sentencing factors set

7   forth in 18 U.S.C. § 3553(a).  Defendant understands that the

8   Sentencing Guidelines are advisory only, that defendant cannot have

9   any expectation of receiving a sentence within the calculated

10  Sentencing Guidelines range, and that after considering the

11  Sentencing Guidelines and the other § 3553(a) factors, the Court will

12  be free to exercise its discretion to impose any sentence it finds

13  appropriate up to the maximum set by statute for the crimes of

14  conviction.

15       13.   Defendant and the United States agree to the following

16  applicable Sentencing Guidelines factors:

17     Base Offense Level:              7        U.S.S.G. §§ 2B1.1(a)(1)

18     Specific Offense
       Characteristics
19
       Loss $250,000 > $550,000       +12    U.S.S.G. § 2S1.1(b)(1)(G)
20
21     Acceptance of Responsibility:   -3            U.S.S.G. § 3E1.1

22  The United States will agree to a two-level downward adjustment for

23  acceptance of responsibility (and, if applicable, move for an

24  additional one-level downward adjustment under U.S.S.G. § 3E1.1(b))

25  only if the conditions set forth in paragraph 4(d) are met and if

26  defendant has not committed, and refrains from committing, acts

27  constituting obstruction of justice within the meaning of U.S.S.G.

28  § 3C1.1, as discussed below.  Subject to paragraph 27 below, and with

                                    15

the exception that defendant reserves the right to argue for -- and the United States reserves the right to contest -- that an adjustment for mitigating role under U.S.S.G. § 3B1.2 applies, defendant and the United States agree not to seek, argue, or suggest in any way, either orally or in writing, that any other specific offense characteristics, adjustments, or departures relating to the offense level be imposed.  Defendant agrees, however, that if, after signing this agreement but prior to sentencing, defendant were to commit an act, or the United States were to discover a previously undiscovered act committed by defendant prior to signing this agreement, which act, in the judgment of the United States, constituted obstruction of justice within the meaning of U.S.S.G. § 3C1.1, the United States would be free to seek the enhancement set forth in that section and to argue that defendant is not entitled to a downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1.

14.  Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

15.  Defendant and the United States reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

16.  Defendant understands that by pleading guilty, defendant gives up the following rights:

        a.   The right to persist in a plea of not guilty.

        b.   The right to a speedy and public trial by jury.

        c.   The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial.  Defendant

understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

       d.   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

       e.   The right to confront and cross-examine witnesses against defendant.

       f.   The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

       g.   The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

       h.   Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

WAIVER OF APPEAL OF CONVICTION

17.  Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offense to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

17

1

<u>LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE</u>

2     18.  Defendant agrees that, provided the Court imposes a total

3 term of imprisonment within or below the range corresponding to an

4 offense level of 16 and the criminal history calculated by the Court,

5 defendant gives up the right to appeal all of the following: (a) the

6 procedures and calculations used to determine and impose any portion

7 of the sentence; (b) the term of imprisonment imposed by the Court;

8 (c) the fine imposed by the Court, provided it is within the

9 statutory maximum; (d) to the extent permitted by law, the

10 constitutionality or legality of defendant's sentence, provided it is

11 within the statutory maximum; (e) the amount and terms of any

12 restitution order, provided it requires payment of no more than

13 $430,187; (f) the term of probation or supervised release imposed by

14 the Court, provided it is within the statutory maximum; and (g) any

15 of the following conditions of probation or supervised release

16 imposed by the Court: the conditions set forth in Second Amended

17 General Order 20-04 of this Court; the drug testing conditions

18 mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and

19 drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

20     19.  The United States agrees that, provided (a) all portions of

21 the sentence are at or below the statutory maximum specified above

22 and (b) the Court imposes a term of imprisonment within or above the

23 range corresponding to an offense level of 16 and the criminal

24 history calculated by the Court, the United States gives up its right

25 to appeal any portion of the sentence, with the exception that the

26 United States reserves the right to appeal the following: (a) the

27 amount of restitution ordered if that amount is less than $430,187.

28

20.   Defendant also gives up any right to bring a post-conviction collateral attack on the conviction or sentence, including any order of restitution, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction.   Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

<u>RESULT OF WITHDRAWAL OF GUILTY PLEA</u>

21.   Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the United States will be relieved of all of its obligations under this agreement; and (b) should the United States choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

1

RESULT OF VACATUR, REVERSAL OR SET-ASIDE

2    22.   Defendant agrees that if the count of conviction is

3  vacated, reversed, or set aside, both the United States and defendant

4  will be released from all their obligations under this agreement.

5

EFFECTIVE DATE OF THIS AGREEMENT

6    23.   This agreement is effective upon signature and execution of

7  all required certifications by defendant, defendant's counsel, and an

8  Assistant United States Attorney.

9

BREACH OF AGREEMENT

10   24.   Defendant agrees that if defendant, at any time after the

11 effective date of this, knowingly violates or fails to perform any of

12 defendant's obligations under this agreement ("a breach"), the United

13 States may declare this agreement breached.   All of defendant's

14 obligations are material, a single breach of this agreement is

15 sufficient for the United States to declare a breach, and defendant

16 shall not be deemed to have cured a breach without the express

17 agreement of the United States in writing.   If the United States

18 declares this agreement breached, and the Court finds such a breach

19 to have occurred, then: (a) if defendant has previously entered a

20 guilty plea pursuant to this agreement, defendant will not be able to

21 withdraw the guilty plea, and (b) the United States will be relieved

22 of all its obligations under this agreement.

23   25.   Following the Court's finding of a knowing breach of this

24 agreement by defendant, should the United States choose to pursue any

25 charge that was either dismissed or not filed as a result of this

26 agreement, then:

27

28

a.    Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.    Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c.    Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

<u>COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES</u>

<u>OFFICE NOT PARTIES</u>

26.  Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the United States' sentencing recommendations or the parties' agreements to facts or sentencing factors.

27.  Defendant understands that both defendant and the United States are free to: (a) supplement the facts by supplying relevant

information to the United States Probation and Pretrial Services
Office and the Court, (b) correct any and all factual misstatements
relating to the Court's Sentencing Guidelines calculations and
determination of sentence, and (c) argue on appeal and collateral
review that the Court's Sentencing Guidelines calculations and the
sentence it chooses to impose are not error, although each party
agrees to maintain its view that the calculations in paragraph 13 are
consistent with the facts of this case.  While this paragraph permits
both the United States and defendant to submit full and complete
factual information to the United States Probation and Pretrial
Services Office and the Court, even if that factual information may
be viewed as inconsistent with the facts agreed to in this agreement,
this paragraph does not affect defendant's and the United States'
obligations not to contest the facts agreed to in this agreement.

28.  Defendant understands that even if the Court ignores any
sentencing recommendation, finds facts or reaches conclusions
different from those agreed to, and/or imposes any sentence up to the
maximum established by statute, defendant cannot, for that reason,
withdraw defendant's guilty plea, and defendant will remain bound to
fulfill all defendant's obligations under this agreement.  Defendant
understands that no one -- not the prosecutor, defendant's attorney,
or the Court -- can make a binding prediction or promise regarding
the sentence defendant will receive, except that it will be within
the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

29.  Defendant understands that, except as set forth herein,
there are no promises, understandings, or agreements between the
United States and defendant or defendant's attorney, and that no

22

1  additional promise, understanding, or agreement may be entered into

2  unless in a writing signed by all parties or on the record in court.

3  <u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

4      30.  The parties agree that this agreement will be considered

5  part of the record of defendant's guilty plea hearing as if the

6  entire agreement had been read into the record of the proceeding.

7  AGREED AND ACCEPTED

8  UNITED STATES ATTORNEY'S OFFICE
   FOR THE CENTRAL DISTRICT OF
9  CALIFORNIA

10 TRACY L. WILKISON
   Acting United States Attorney

11

12 _____      June 9, 2021
   CATHERINE S. AHN                       _____
13 SCOTT PAETTY                           Date
   BRIAN FAERSTEIN
14 Assistant United States Attorneys

15

16 CHRISTOPHER FENTON
   Trial Attorney, DOJ Fraud Section

17

18 _____      6-9-21
   EDVARD PARONYAN                        _____
19 Defendant                              Date

20

21                                        6/9/4
22 _____      _____
   MICHAEL G. FREEDMAN                    Date
23 Attorney for Defendant EDVARD
   PARONYAN

24

25

26              <u>CERTIFICATION OF DEFENDANT</u>

27      I have read this agreement in its entirety.  I have had enough

28  time to review and consider this agreement, and I have carefully and

                              23

thoroughly discussed every part of it with my attorney.  I understand
the terms of this agreement, and I voluntarily agree to those terms.
I have discussed the evidence with my attorney, and my attorney has
advised me of my rights, of possible pretrial motions that might be
filed, of possible defenses that might be asserted either prior to or
at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),
of relevant Sentencing Guidelines provisions, and of the consequences
of entering into this agreement.  No promises, inducements, or
representations of any kind have been made to me other than those
contained in this agreement.  No one has threatened or forced me in
any way to enter into this agreement.  I am satisfied with the
representation of my attorney in this matter, and I am pleading
guilty because I am guilty of the charge and wish to take advantage
of the promises set forth in this agreement, and not for any other
reason.

_____           6-9-21
EDVARD PARONYAN                        Date
Defendant


## CERTIFICATION OF DEFENDANT'S ATTORNEY

I am EDVARD PARONYAN's attorney.  I have carefully and
thoroughly discussed every part of this agreement with my client.
Further, I have fully advised my client of his rights, of possible
pretrial motions that might be filed, of possible defenses that might
be asserted either prior to or at trial, of the sentencing factors
set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines
provisions, and of the consequences of entering into this agreement.
To my knowledge: no promises, inducements, or representations of any

24

kind have been made to my client other than those contained in this

agreement; no one has threatened or forced my client in any way to

enter into this agreement; my client's decision to enter into this

agreement is an informed and voluntary one; and the factual basis set

forth in this agreement is sufficient to support my client's entry of

a guilty plea pursuant to this agreement.

_____          6/9/21
_____          _____

MICHAEL G. FREEDMAN                       Date
Attorney for Defendant EDVARD
PARONYAN